UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/23/14

------------------------------X
DODONA I, LLC, on Behalf of     :
Itself and All Others           :
Similarly Situated,             :
                                :
                                :   10 Civ. 7497 (VM)
              Plaintiff,        :
                                :
      -against-                 :   **DECISION AND ORDER**
                                :
GOLDMAN, SACHS & CO., et al.,   :
                                :
              Defendants.       :
------------------------------ X

**VICTOR MARRERO, United States District Judge.**

    Court-appointed lead plaintiff Dodona I, LLC
("Dodona") brought this action on behalf of a putative
class of investors in certain securities offerings led by
defendants Goldman, Sachs & Co. ("GS&Co"), The Goldman
Sachs Group, Inc. ("Goldman"), and former Goldman employees
Peter L. Ostrem ("Ostrem") and Derryl K. Herrick
("Herrick") (collectively, "Defendants").[1]  The securities
offerings at issue were two collateralized debt obligations
("CDOs"): Hudson Mezzanine Funding 2006-1 ("Hudson 1") and
Hudson Mezzanine Funding 2006-2 ("Hudson 2") (collectively,
the "Hudson CDOs").  Dodona alleges violations of federal

---

[1] Dodona's complaint, filed September 30, 2010, also named as
defendants the following entities:  Hudson Mezzanine Funding
2006-1, Ltd. ("Hudson 1 Ltd."), Hudson Mezzanine Funding 2006-1,
Corp. ("Hudson 1 Corp."), Hudson Mezzanine Funding 2006-2, Ltd.
("Hudson 2 Ltd."), and Hudson Mezzanine Funding 2006-2, Corp.
("Hudson 2 Corp.") (together with Hudson 1 Ltd., Hudson 1 Corp.,
and Hudson 2 Ltd., the "Hudson SPEs").  (Dkt. No. 1.)  On
December 14, 2012, the Hudson SPEs were voluntarily dismissed
from the suit without prejudice.  (Dkt. No. 104.)

-1-

securities laws; common law fraud; aiding and abetting fraud; fraudulent concealment; and unjust enrichment. Dodona's allegations are detailed more fully in this Court's prior opinion in this action. See Dodona I, LLC v. Goldman, Sachs & Co., 847 F. Supp. 2d 624 (S.D.N.Y. 2012) ("Dodona I").

Dodona now moves, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), to certify a class (the "Class" or "Proposed Class") comprised of investors in the Hudson CDOs "who, from their initial offering through April 27, 2010, purchased or otherwise acquired the Hudson CDOs in the United States, and were damaged thereby." (Pl.'s Mem. of Law in Supp. of Mot. for Class Cert., dated December 17, 2012 ("Pl.'s Mem."), at 2, Dkt. No. 108.) Dodona also moves for its appointment as class representative and, pursuant to Rule 23(g) of the Federal Rules of Civil Procedure ("Rule 23(g)"), for appointment of Berger & Montague, P.C. ("B&M") as counsel for the Class and Gusrae Kaplan Nusbaum, PLLC ("GKN") as local counsel for the Class. (Pl.'s Mot. for Class Cert., dated December 17, 2012, at 2, Dkt. No. 107.)

The Court has reviewed the parties' submissions regarding this matter[2] and, for the reasons discussed below, the Court finds that the Proposed Class satisfies all of the requirements of Rule 23(a) and the pertinent requirements of Rule 23(b). This Class is subject to further adjustment or decertification if warranted as facts develop. Additionally, the Court finds that B&M and GKN satisfy the pertinent requirements of Rule 23(g). Accordingly, Dodona's motion for class certification and appointment of class representative and class counsel is GRANTED.

## I.   BACKGROUND[3]

Dodona's claims arise from its investment in the Hudson CDOs. The Hudson CDOs were each an example of a synthetic CDO, a financial instrument that "mimics" the cash flow of particular "referenced" assets which, in the

---

[2] The Court has reviewed Dodona's submissions in support of its motion (Pl.'s Mem.; Pl.'s Reply Mem. in Further Supp. of Mot. for Class Cert., dated September 16, 2013 ("Pl.'s Reply Mem."), Dkt. No. 128) and Defendants' submission in opposition to Dodona's motion (Def.'s Mem. of Law in Opp. to Mot. for Class Cert. ("Def.'s Mem."), dated May 15, 2013, Dkt. No. 119), as well as the documents accompanying these memoranda. The Court has also reviewed the following letters and any accompanying documents: letters from Defendants dated November 7, 2013, November 12, 2013 (Dkt. No. 135), and December 4, 2013 (Dkt. No. 137), and letters from Dodona dated November 8, 2013 (Dkt. No. 134) and December 2, 2013 (Dkt. No. 136).

[3] A more detailed description of the facts of this case is provided in Dodona I. All facts in the Background section are taken from that opinion and the documents upon which it relied.

case of the Hudson CDOs, were residential mortgage backed securities ("RMBS"). RMBS are, in turn, collateralized by pools of residential mortgages. Thus, the investors in the Hudson CDOs, like Dodona, were betting that the referenced RMBS -- and therefore the underlying residential mortgages -- would perform well, and not experience negative credit events. See Dodona I, 847 F. Supp. 2d at 631.

Dodona's claims against the Defendants are built upon allegations that Goldman, through its role in various aspects of the subprime mortgage market in the late 2000s, possessed information not yet available to the broader public demonstrating the deteriorating performance of subprime mortgages. In the years leading up to 2006, Goldman had bet heavily that residential mortgages would continue to do well; or, in financial parlance, Goldman was long on subprime mortgage-backed securities. By late 2006, Goldman officials had noticed an increase in negative credit events in subprime loans and recognized a corresponding need to reduce Goldman's long exposure.

One way Goldman began offsetting subprime risk was by shorting RMBS and mortgage-backed CDOs -- in other words, betting that subprime mortgages and the securities instruments built upon them would decrease in value. The

-4-

Hudson 1 and Hudson 2 offerings occurred during this shift in Goldman's strategy. The Hudson 1 offering commenced on December 5, 2006; Hudson 2 commenced on February 8, 2007. The Marketing Book for Hudson 1 reported that "Goldman ha[d] aligned incentives with the Hudson program by investing in a portion of equity." (Am. Compl. ¶ 175, Dkt. No. 40.) In other words, Goldman was long on a portion of the equity notes. However, Goldman was also short on the entire value of the Hudson CDOs. A subsidiary of Goldman served as the sole credit protection buyer for both of the Hudson CDOs, meaning that if the referenced RMBS experienced a negative credit event, the subsidiary would receive an insurance payout.

Dodona purchased $3 million of Hudson 2 notes on approximately January 24, 2007 from GS&Co and $1 million of the Hudson 1 notes on approximately February 6, 2007 from an intermediate fund which had purchased its securities from GS&Co.

The credit quality of the Hudson CDOs rapidly deteriorated at the same time as the downturn of the housing market. By September 2007, Moody's downgraded the credit rating of certain of the Hudson 1 notes and placed on "negative watch" certain of the Hudson 2 notes. By mid-2008, Standard & Poor's had downgraded $286 million of the

Hudson 2 notes, and the Hudson 1 notes were downgraded to junk status. As a result of those downgrades, the Goldman subsidiary, in its role as the credit protection buyer, would have received insurance payouts.

The fallout of the subprime crisis spurred regulatory and legislative investigation. In April 2011, the United States Senate Permanent Subcommittee on Investigations cited the Hudson CDOs among evidence that Goldman "issued and sold to clients RMBS and CDO securities containing or referencing high risk assets that Goldman Sachs wanted to get off its books," and that Goldman's strategic shorting allowed it to "profit[] from the loss in value of the very CDO securities it had sold to its clients." (Id. ¶¶ 108, 52.)]

Dodona alleges that the Defendants created the Hudson CDOs as part of a scheme to decrease Goldman's subprime exposure at the expense of its investors by shorting those same CDOs; that Defendants failed to disclose this strategy to investors; and that Defendants failed to disclose that they did not reasonably believe that the Hudson CDOs would be profitable for investors like Dodona. Dodona claims it suffered damages when the Hudson CDO notes were liquidated and when it sold them at a loss.

-6-

Defendants moved to dismiss the complaint, and in the _Dodona I_ decision, the Court denied in part and granted in part Defendants' motions.   Defendants filed answers, and GS&Co asserted two counterclaims against Dodona, one alleging breach of contract and the other fraudulent inducement.   (Dkt. No. 81 ¶¶ 242-45, 247-57.)   Dodona now moves for certification of the Proposed Class, Dodona's appointment as class representative, and for appointment of class counsel.

## II.   DISCUSSION

### A.   LEGAL STANDARD FOR CLASS CERTIFICATION

To certify the Proposed Class, Dodona must satisfy all four of the requirements of Rule 23(a) and the relevant portions of Rule 23(b)(3).   See _In re Livent Noteholders Sec. Litig._, 210 F.R.D. 512, 514 (S.D.N.Y. 2002) ("_Livent_").

To meet Rule 23(a)'s prerequisites, a plaintiff must demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).   Rule 23(b)(3) further requires that Dodona demonstrate that common questions of law or fact

"predominate over any questions affecting individual members" and that maintaining a class action "is superior to other available methods" of adjudication. Fed. R. Civ. P. 23(b)(3).

Trial courts are given substantial discretion in determining whether to grant class certification because "'the district court is often in the best position to assess the propriety of the class and has the ability . . . to alter or modify the class, create subclasses, and decertify the class whenever warranted.'" In re Nigeria Charter Flights Contract Litig., 233 F.R.D. 297, 301 (E.D.N.Y. 2006) (alteration in original) (quoting In re Sumitomo Copper Litig., 262 F.3d 134, 139 (2d Cir. 2001)). The Second Circuit has directed courts to adopt a liberal interpretation of Rule 23 in order to maximize the benefits to private parties and, in cases such as this that involve alleged manipulation of public markets, to maximize the benefits to the public provided by class actions. See In re Sumitomo Copper Litig., 182 F.R.D. 85, 88-89 (S.D.N.Y. 1998) ("Sumitomo I"); see also In re Sumitomo Copper Litig., 194 F.R.D. 480, 481 (S.D.N.Y. 2000) ("Sumitomo II"). As the Second Circuit stated in Green v. Wolf Corp., "'[I]f there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is

-8-

always subject to modification should later developments during the course of the trial so require.'" 406 F.2d 291, 298 (2d Cir. 1968) (quoting Esplin v. Hirshi, 402 F.2d 94, 99 (10th Cir. 1968)).

1.   Rule 23(a) Requirements

a.   Numerosity

To meet the requirements of Rule 23(a)(1), "the class must be so large that joinder of all members would be impracticable" (the "Numerosity Requirement"). Sumitomo II, 194 F.R.D at 482 (citing In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 290 (2d Cir. 1992)). Although precise calculation of the number of potential class members is not required, the Second Circuit has observed that "numerosity is presumed at a level of 40 members." In re Vivendi Universal, S.A. Sec. Litig., 242 F.R.D. 76, 83 (S.D.N.Y. 2007) ("Vivendi") (quotation marks omitted) (citing Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).

The Proposed Class contains "over 70 putative members." Pl.'s Mem. at 2; see also Lederer Decl., Ex. 1 at ¶ 45 (Mason Report) ("[C]onservatively, there are, at a minimum, 70 investors who qualify in the definition of the proposed Class, and potentially many more.").

The Court is not persuaded by Defendants' argument that the Hudson 1 and Hudson 2 investors should not be pooled into one class. Defendants cite Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc. for the proposition that securities "sold pursuant to different information memoranda . . . in individually negotiated and priced transactions" should not be pooled into one class. 269 F.R.D. 252, 257-58 (S.D.N.Y. 2010). However, the Abu Dhabi case concerned "no less than fifty-six individualized memoranda." Id. at 263. In contrast, the instant case concerns only two offering circulars which were similar in all relevant aspects. See Dodona I, 847 F. Supp. 2d at 634 ("In connection with the Hudson CDO offerings, GS & Co published two offering circulars . . . which detailed the structure and terms of the Hudson CDOs, explained the roles of the various parties, and made risk disclosures and disclaimers."); id. at 634-35 (quoting identical language from both offering circulars discussing, among other things, risk disclosures and disclaimers); see also Ge Dandong v. Pinnacle Performance Ltd., 10 Civ. 8086, 2013 WL 5658790, at *2-3 (S.D.N.Y. Oct. 17, 2013) (certifying a class consisting of investors in seven series of notes each offered pursuant to its own set of offering documents).

Defendants' argument that the Proposed Class should include only those entities that made the decision to buy the securities also fails to persuade the Court.  See, e.g., In re Franklin Nat'l Bank Sec. Litig., 574 F.2d 662, 670 n.5 (2d Cir. 1978) ("It is the beneficial holders who are the members of the class.").  Indeed, the subpoenas Defendants themselves issued during discovery stated that "'Beneficial Owner' shall mean the true owner of the Hudson CDO Securities, on whose behalf you purchased or otherwise acquired the Hudson CDO Securities."  (Pl.'s Reply Mem., Ex. A at ¶ 152 (Mason Rebuttal).)

Thus, the Court finds that the Proposed Class meets the Numerosity Requirement of Rule 23(a)(1).

   b.   Commonality of Law or Fact Questions

Rule 23(a)(2) requires plaintiffs to demonstrate that common issues of law or fact affect all class members (the "Commonality Requirement"), which has been characterized as a "low hurdle."  See Sumitomo II, 194 F.R.D at 482 (citing In re Prudential Sec. Litig., 163 F.R.D. 200, 206 n.8 (S.D.N.Y. 1995)).

It is evident that common questions of law and fact exist in this proceeding.  Where plaintiffs allege that class members have been injured by similar material misrepresentations and omissions, the Commonality

-11-

Requirement is satisfied.  See, e.g., Vivendi, 242 F.R.D. at 84.  The claims of the Proposed Class clearly arise from a common course of conduct by Defendants.  Dodona specifically alleges that omissions in the Hudson CDO offering documents resulted in failure to disclose investment risk.  Defendants provided those same offering documents with those same alleged omissions to all members of the Proposed Class.  Furthermore, there are numerous issues of law and fact that are common to the Proposed Class, including whether: (1) Defendants omitted material facts relevant to risks associated with investing in the Hudson CDOs; (2) Defendants acted with the requisite state of mind; (3) a presumption of reliance applies to the claims of the members of the Proposed Class; (4) Defendants' alleged omissions and conduct, assuming they are proved, violated the Securities Exchange Act of 1934 (the "1934 Act") and New York common law; and (5) members of the Proposed Class suffered damages and the extent and appropriate measure of damages.

Accordingly, because Dodona alleges omissions of material facts that were common to all investors in the Hudson CDOs, the Commonality Requirement of Rule 23(a)(2) is satisfied.

c.   Typicality

Rule 23(a)(3) requires that Dodona's claims be typical of the class (the "Typicality Requirement").   "Rule 23(a)(3) is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."   Sumitomo I, 182 F.R.D. at 94 (internal quotation marks and citation omitted).

The Typicality Requirement is "not demanding." Tsereteli v. Residential Asset Securitization Trust 2006-A8, 283 F.R.D. 199, 208 (S.D.N.Y. 2012) (internal citations omitted).   Typicality "does not require factual identity between the named plaintiffs and the class members, only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." Pennsylvania Ave. Funds v. Inyx Inc., 08 Civ. 6857, 2011 WL 2732544, at *4 (S.D.N.Y. July 5, 2011) ("Inyx") (internal quotation marks omitted).

As discussed in connection with the Commonality Requirement, there are common questions of law and fact affecting all class members.   Dodona alleges that it and all other members of the Proposed Class were "damaged by purchasing the CDOs pursuant to Offering Circulars that

contained the same allegedly material omissions concerning investment risk." (Pl.'s Mem. at 13.) Moreover, those allegedly material omissions are central to the claims of all members of the Proposed Class. Dodona, along with all members of the Proposed Class, "will focus on the same omissions and legal theories in proving Defendants' liability." Id.

Defendants argue that Dodona's claims are atypical of the claims of the class because, among other things, Dodona is subject "to unique legal and factual defenses" and engaged in an "unusual trading pattern." (Def.'s Mem. at 29.) However, Inyx -- the case Defendants cite in support of the contention that these factors disqualify Dodona -- concerned trading in securities of the defendant issuer. See Inyx, 2011 WL 2732544 at *4. In contrast, the allegedly unusual trading pattern to which Defendants refer in the instant case was "Plaintiff's investment strategy of taking short positions on RMBS underlying Hudson 1" (Def.'s Mem. at 29) -- not trading in the Hudson CDOs themselves. The Inyx Court certified the class because the plaintiff's "unusual trading patterns . . . [were not] with respect to Inyx shares." Inyx, 2011 WL 2732544 at *4.

Defendants have not persuasively pointed to unique legal and factual defenses to which the claims of Dodona,

-14-

but not other members of the Proposed Class, are subject.
Defendants allude to "Plaintiff's profit on its Hudson 1
transactions" without demonstrating that this consideration
would defeat typicality.  See, e.g., Tserateli, 283 F.R.D.
at 208 ("[A] finding of typicality would not be precluded
even if certain plaintiffs are unable to demonstrate that
they would recover any damages with respect to certain
certificates.") (emphasis added).   If relevant at all,
Defendants' point seems to apply more appropriately to the
question of damages, discussed below in connection with the
Predominance Requirement (as defined below).

Accordingly, Dodona has sufficiently demonstrated that
the potential class members' claims satisfy the Typicality
Requirement of Rule 23(a)(3).

d.   Adequacy

Rule 23(a)(4) requires that the representative of the
parties will "fairly and adequately protect the interests
of the class" (the "Adequacy Requirement").   Fed. R. Civ.
P. 23(a)(4).    To meet this requirement, the lead
plaintiffs' counsel must be "qualified, experienced, and
generally able to conduct the proposed litigation," and the
class representatives must not have interests conflicting
with the class.   See Livent, 210 F.R.D. at 517 (internal
citations and quotation marks omitted).

-15-

The Court is persuaded that Dodona's attorneys have vigorously pursued these claims to date and have adequately represented classes in other securities litigation and other complex class actions. Dodona's attorneys have demonstrated a commitment to continue such vigorous prosecution of the action and to devote all resources necessary in order to obtain the best possible result for Dodona and all putative members of the Proposed Class. (See Lederer Decl. at 3, Dkt. No. 109.) Therefore, counsel for Dodona is qualified, experienced and able for the purposes of Rule 23(a)(4).

Defendants raise a potential conflict of interest between Dodona and certain investors who are putative members of the Proposed Class, namely Citigroup and Bear Sterns Asset Management ("BSAM"). However, the mere statement that Dodona previously made allegations against Citigroup and BSAM in an unrelated litigation -- with no direct connection to the Hudson CDOs -- is insufficient to demonstrate a conflict pernicious enough to suggest that Dodona cannot adequately protect the interests of the class. After class certification, if Citigroup and BSAM determine for themselves they are sufficiently concerned about a potential conflict of interest with the class

-16-

representative, they may choose to opt out of the class action, as discussed in the next section.

Accordingly, the Court finds that Dodona has satisfied the Adequacy Requirement of Rule 23(a)(4).

2.   Rule 23(b)(3) Requirements

In addition to satisfying Rule 23(a), Dodona must also establish that this action is maintainable as a class action under Rule 23(b).   Dodona seeks to certify the Proposed Class pursuant to Rule 23(b)(3), which provides that an action is maintainable as a class action if "questions of law or fact common to class members predominate over any questions affecting only individual members" (the "Predominance Requirement"), and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" (the "Superiority Requirement").   Fed. R. Civ. P. 23(b)(3).   "A class certified under Rule 23(b)(3) is sometimes referred to as an 'opt-out' class because Rule 23(c)(2) mandates that members of a class certified pursuant to Rule 23(b)(3) be afforded the opportunity to 'request exclusion' from that class."   Vivendi, 242 F.R.D. at 90.   Should the Court certify the Proposed Class, any investor who does not opt out of the class "is bound by the final disposition of the case."   Id.

-17-

a.   Predominance Requirement

The Predominance Requirement is a more demanding standard than the Commonality Requirement and is satisfied if "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Id. (citing Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002)).

Dodona's claim under § 10(b) of the 1934 Act ("§ 10(b)") requires proof of the following elements: "[T]he defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." In re MF Global Holdings Ltd. Secs. Litig., No. 11 Civ. 7866, 2013 WL 5996426 (S.D.N.Y. Nov. 12, 2013). There is no dispute as to the class-wide, generalized nature of Dodona's proffered proof with respect to the first three elements.

Defendants' two principal arguments with respect to Dodona's purported failure to meet the Predominance Requirement address the fourth and fifth elements of

-18-

Dodona's § 10(b) claim.   First, Defendants argue that a class-wide presumption of reliance does not apply -- or if it does apply, that Defendants have rebutted this presumption -- in either case necessitating individualized proof of reliance on an investor-by-investor basis. Second, Defendants argue that individualized issues of loss causation foreclose a finding of predominance.   The Court considers, and rejects, each of these arguments in turn.

  i.  <u>Presumption of Reliance</u>

Dodona's claims "sound in omission . . . ." <u>Dodona I</u>, 847 F. Supp. 2d at 646; <u>see</u> <u>id.</u> at 647 ("Dodona has adequately alleged an actionable omission because, assuming it is right about the known risks, the risk disclosures in the Offering Circulars were inaccurate and therefore misleading.").   As the Court held in <u>Dodona I</u>, "[s]ince Dodona alleges omissions rather than affirmative misstatements, the element of reliance may be presumed if the omissions were material." <u>Id.</u> at 648.   Furthermore, with regard to whether the alleged omissions were material, "the risks associated with an investment are typically of primary concern for prospective investors." <u>Id.</u>   At this point, "Dodona has sufficiently alleged the materiality of the omissions, and reliance may therefore be presumed." <u>Id.</u>; <u>see Affiliated Ute Citizens of Utah v. United States</u>,

406 U.S. 128, 153-54 (1972) ("Affiliated Ute") (in a case "involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision.").

Defendants argue that the Affiliated Ute presumption does not apply because Dodona asserts reliance on Defendants' affirmative misrepresentations. However, as discussed above, Dodona's claims are based on omissions. The Affiliated Ute presumption applies to cases "involving primarily a failure to disclose," which is not the same as cases involving exclusively a failure to disclose. See Affiliated Ute, 406 U.S. at 153 (emphasis added). Moreover, "where plaintiffs' claims are based on a combination of omissions and misstatements, courts in this Circuit have acknowledged the applicability of the Affiliated Ute presumption." Fogarazzao v. Lehman Bros., Inc., 232 F.R.D. 176, 186 (S.D.N.Y. 2005). This result makes sense considering that "the theory behind the Affiliated Ute presumption . . . is not undermined simply because a defendant makes misstatements at the same time it omits material information." Id. Therefore, the existence in Dodona's complaint of certain affirmative

misrepresentations does not at this stage in the litigation preclude Dodona from relying on the <u>Affiliated Ute</u> presumption.

Defendants also contend that, even if the <u>Affiliated Ute</u> presumption of reliance could theoretically apply in this case, the presumption "has either already been rebutted or would be at summary judgment or trial." (Def.'s Mem. at 19.)   The Court is not persuaded that the Defendants' cursory citations to a few statements made in the course of discovery (<u>see</u> <u>id.</u> at 19-20) is sufficient to rebut the presumption at this point.   Moreover, "the office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the method best suited to adjudication of the controversy fairly and efficiently." <u>Amgen Inc. v. Connecticut Ret. Plans & Trust Funds</u>, 133 S. Ct. 1184, 1191 (2013) (internal quotation marks and alterations omitted).   The Court declines to rule on the merits of the reliance issue at the stage of class certification.

### ii.   <u>Loss Causation and Damages</u>

Dodona "need not <u>prove</u> loss causation at this stage[;] showing that loss causation will be demonstrated by class-wide proof is sufficient to satisfy the predominance requirement of Rule 23(b)(3) as to loss causation." <u>Lapin</u>

v. Goldman Sachs & Co., 254 F.R.D. 168, 185 (S.D.N.Y. 2008) (emphasis in original); see also Erica P. John Fund, Inc. v. Halliburton Co., 131 S. Ct. 2179, 2183 (2011) (holding that "securities fraud plaintiffs [need not] prove loss causation in order to obtain class certification.").

The Court has already held that in this case, it is reasonable to infer "that [Defendants'] omissions bear upon the loss suffered such that [Dodona] would have been spared all or an ascertainable portion of that loss absent the fraud." Dodona I, 847 F. Supp. 2d at 650. As discussed above, all members of the Proposed Class purchased the Hudson CDOs pursuant to the same set of Offering Circulars containing the same alleged omissions, and those Offering Circulars will be central to the proof of loss causation. Therefore, when the appropriate time comes for Dodona to prove the merits of the issue of loss causation, common issues of generalized proof will predominate.

Defendants submit that "Plaintiff and other putative class members will face insurmountable burdens in proving loss causation." (Def.'s Mem. at 26.) However, class certification is not the appropriate stage of the litigation to determine loss causation. Defendants' implied argument -- that individualized issues of proof for loss causation cause the Proposed Class to fail the

Predominance Requirement -- flies in the face of Supreme Court precedent that "loss causation and the . . . misleading nature of the defendant's alleged . . . omissions are common questions that need not be adjudicated before a class is certified." Amgen Inc., 133 S. Ct. at 1200.

Defendants argue that determination of damages will require individualized inquiries. However, this is not a case in which "[q]uestions of individual damage calculations will inevitably overwhelm issues common to the class." Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1433 (2013). To the contrary, Dodona makes class-wide claims for rescissionary damages and has demonstrated that calculation of individual class members' damages will rely on common methodology. See Lederer Decl., Ex. 1 at ¶ 53 (Mason Report) (stating that "damages to each of the Class members can be calculated in a formulaic manner"). Moreover, "it is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification." Seijas v. Republic of Argentina, 606 F.3d 53, 58 (2d Cir. 2010); see also Lapin, 254 F.R.D. at 181 ("Although the damages, if any, owed to each individual class plaintiff who succeeds on his or her claims will vary, that fact does not

defeat certification if the method of calculating damages is common to the class."). Thus, in light of the class-wide methodology for calculation of damages, any necessary individual inquiries are a far cry from the scope of individualized issues of proof that would defeat a finding of predominance under Rule 23(b)(3).

Accordingly, Dodona has satisfied the Predominance Requirement of Rule 23(b)(3).[4]

b.   <u>Superiority Requirement</u>

When certifying a proposed class in accordance with Rule 23(b)(3), courts must consider whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Superiority Requirement asks courts to balance, in terms of fairness and efficiency, the advantages of a class action against those of alternative available methods of adjudication. <u>See</u> Fed. R. Civ. P. 23 Advisory Committee Notes, 1966 Amendment, 28 U.S.C.A. Rule 23, at 385 ("Subdivision (b)(3) encompasses those cases in

_____

[4] Defendants also suggest that a class should not be certified with respect to Dodona's common law fraud and unjust enrichment claims. The cases Defendants cite -- <u>Securities Investor Protection Corp. v. BDO Seidman, LLP</u>, 222 F.3d 63 (2d Cir. 2000) and <u>International Fund Management S.A. v. Citigroup, Inc.</u>, 822 F. Supp. 2d 368 (S.D.N.Y. 2011) -- are, respectively, irrelevant and distinguishable. The Class certified herein covers not only Dodona's § 10(b) claims but also the common law fraud and unjust enrichment claims.

-24-

which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."). Rule 23(b)(3) identifies several factors to consider in determining whether a class action is in fact "superior to other available methods for fairly and efficiently adjudicating the controversy":

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Defendants contend that "the proposed class is rife with differences, idiosyncracies and conflicts" and that "[t]here is no reason why claims relating to the Hudson CDOs could not be asserted independently." (Def.'s Mem. at 30.)   However, the Court is not persuaded that any such differences in this proceeding distinguish the proposed class from any other securities class action.   Moreover, the Court again notes that modification of the class and creation of subclasses is possible should it become necessary at a later phase of the proceeding.

Moreover, the mere fact that claims <u>could</u> be asserted independently is not a reason to defeat class certification. Rule 23(b)(3) vests a judge with the power to determine that, even where claims could be asserted in separate lawsuits, the class action method is superior to individual lawsuits. Defendants' argument ignores the fact that each investor's prosecution of independent lawsuits "would risk disparate results among those seeking redress, ... would exponentially increase the costs of litigation for all, and would be a particularly inefficient use of judicial resources." <u>In re Beacon Assocs. Litig.</u>, 282 F.R.D. 315, 334 (S.D.N.Y. 2012) (alteration in original) (internal quotation marks omitted). Even notwithstanding the significant economies of a single class action, there is a risk that absent such class action, certain investors would be unable to adjudicate their claims. Here, Dodona has demonstrated that the small-sized investments of some members of the Proposed Class would make individualized lawsuits impracticable for those investors. Additionally, Dodona notes the absence of pending litigation by or against putative Class members in connection with the Hudson CDOs, a fact which weighs towards superiority of the class action mechanism. Accordingly, Dodona has satisfied the Superiority Requirement of Rule 23(b)(3).

Dodona having satisfied all of the relevant requirements of Rule 23, the Court thus certifies the Proposed Class and appoints Dodona as class representative.

B.   APPOINTMENT OF LEAD COUNSEL

Under Rule 23(g), a court's appointment of lead class counsel must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class . . . ." Fed. R. Civ. P. 23(g)(1)(A).  Additionally, a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class . . . ." Fed. R. Civ. P. 23(g)(1)(B).

Additionally, the Private Securities Litigation Reform Act ("PSLRA") instructs that a lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class."   15 U.S.C. § 78u-4(a)(3)(B)(v).  The PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." Varghese v. China Shenghuo Pharm. Holdings, Inc., 589 F.

Supp. 2d 388, 398 (S.D.N.Y. 2008) (quoting In re Adelphia Commc'ns Corp. Sec. & Derivative Litig., No. 03 MDL 1529, 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008) (internal citation omitted)).

Dodona has selected B&M as counsel for the Class and GKN as local counsel for the Class. A representative of B&M has submitted a declaration setting forth both B&M's and GKN's extensive experience in prosecuting securities fraud actions. (Lederer Decl. at 2-3; id. at Ex. 19 (B&M firm résumé); id. at Ex. 20 (GKN firm résumé).)

Additionally, as discussed above in connection with satisfaction of the Adequacy Requirement of Rule 23(a)(4), Dodona's counsel has vigorously pursued Dodona's claims to date and has significant experience representing classes in other securities litigation and other complex class actions. Dodona's counsel has demonstrated knowledge of the applicable law and has committed significant resources to its representation of Dodona.

Accordingly, the Court approves Dodona's selection of B&M as its choice of lead counsel and GKN as local counsel. See, e.g., In re Tarragon Corp. Sec. Litig., No. 07 Civ. 7972, 2007 WL 4302732, at *2 (S.D.N.Y. Dec. 6, 2007) (approving counsel based on "affidavit setting forth [the] law firm's experiences as class counsel").

-28-

## III. <u>ORDER</u>

For the reasons discussed above, it is hereby

**ORDERED** that the Motion (Dkt. No. 107) of plaintiff Dodona I, LLC for Class Certification and Appointment of Class Representative and Class Counsel is GRANTED, in accordance with this Decision and Order.

**SO ORDERED.**

Dated: New York, New York
      22 January 2014

                               VICTOR MARRERO
                               U.S.D.J.