1622 LOCUST STREET | PHILADELPHIA, PA 19103-6305 | phone 215/875-3000 | fax 215/875-4604 | www.bergermontague.com

# Berger & Montague, P.C.
ATTORNEYS AT LAW

LAWRENCE J. LEDERER    ALSO ADMITTED IN DC
WRITER'S DIRECT DIAL   215/875-4625
WRITER'S DIRECT FAX   215/875-4604
WRITER'S DIRECT E-MAIL   llederer@bm.net

February 25, 2014

**By ECF and Fax (To 212/805-4258)**

The Honorable Debra Freeman
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

    Re: ***Dodona I, LLC v. Goldman, Sachs & Co., et al.,*** **10 Civ. 7497 (VM)(DCF) (S.D.N.Y.)**

Dear Judge Freeman:

    We represent lead plaintiff Dodona I, LLC ("Plaintiff") and the class. We write to request an order prohibiting defendants Goldman, Sachs & Co., The Goldman Sachs Group, Inc., Peter L. Ostrem and Darryl K. Herrick (collectively, the "Defendants") and their counsel from communicating with class members concerning any aspect of this litigation during the pendency of this litigation and, particularly, regarding any class member's decision to remain in or opt out of the class. Plaintiff's narrowly tailored request does not seek to prohibit any communications Defendants may have with class members regarding existing business relationships or otherwise as long as they are unrelated to this litigation. Plaintiff attempted in good faith to resolve this issue with Defendants before seeking judicial intervention, but was unsuccessful.

## Relevant Facts

    By order filed Jan. 23, 2014, Judge Marrero certified the class in this litigation. *See Dodona I, LLC v. Goldman, Sachs & Co., et al.,* --- F.R.D. ---, 2014 WL 300723, 2014 U.S. Dist. LEXIS 9681 (S.D.N.Y. Jan. 23, 2014). On Feb. 6, 2014, Defendants filed a petition for review of that ruling in the U.S. Court of Appeals for the Second Circuit. *See Dodona I, LLC v. Goldman, Sachs & Co., et al.,* Dkt. 14-419 (2d Cir. Feb. 6, 2014). Plaintiff filed its opposition to Defendants' Rule 23(f) petition on Feb. 18, 2014. *Id.* at Dkt. 10. Defendants' petition remains pending in the Second Circuit.

    The class is comprised of approximately 74 investors. *Dodona,* 2014 WL 300723, at *4. During discovery, Defendants subpoenaed 19 entities that were either class members themselves, or nominees or investment advisors who purchased Hudson CDO securities on behalf of class members. *See* Dkt. 128 at ECF p.10. The subpoenas ostensibly sought both document productions and deposition testimony, but Defendants did not take even one such deposition. Instead, in the course of "negotiating" those subpoenas, Defendants surreptitiously solicited and, on a completely *ex parte* basis, then obtained declarations from two class members that

## Berger&Montague,P.C.
ATTORNEYS AT LAW

The Hon. Debra Freeman
February 25, 2014
Page 2

Defendants submitted with their opposition to class certification. *See* Dkt. 120-3; 120-4; 128-2 at ¶¶ 137-38.[1] Defendants' subpoenas did not request any such declarations, and neither Plaintiff nor its counsel were advised by Defendants that they were soliciting any such declarations or given any notice or any opportunity to be heard. Worse yet, Defendants actually omitted from their filings before Judge Marrero in opposition to class certification that one such declarant actually *refused* to accept defendant Goldman Sachs's proposed "edit" to his declaration which would have declared that omissions about the Hudson CDOs would have been unimportant -- which is the very claim at issue here. *See* Dkt. 128-2 at ¶¶ 139-40. *See also Dodona,* 2014 WL 300723, at *4 ("Dodona specifically alleges that omissions in the Hudson CDO offering documents resulted in a failure to disclose investment risk.").

Accordingly, Plaintiff seeks an order precluding Defendants from communicating with class members concerning this case to ensure that Defendants and their counsel do not encourage any such class member to opt out and/or attempt to settle with any class member individually.[2] This narrow relief is necessary here given Defendants' prior *ex parte* communications with class members, the relatively small size of the class, and the fact that some class members are large financial institutions with whom one or more Defendants may have ongoing business relationships and communications unrelated to this litigation. Restricting Defendants' communications with class members here is also important given the pendency of Defendants' Rule 23(f) petition in the Second Circuit, and that Plaintiff has not yet proposed, and Judge Marrero has not yet ordered, the dissemination of notice to class members. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.28 (2014) (stating that where, as here, a Rule 23(f) petition is pending, the district court "should ordinarily stay the dissemination of class notice").

### Argument

As the leading treatise on class actions summarizes, defendants should communicate with members of a certified class regarding the litigation only through class counsel:

> "Following class certification, a defendant may retain its precertification desires to communicate with absent class members so as to gather information from class members, to attempt to compromise or settle potential class members' claims, or to explain directly to the class the defendant's view of the litigation. However, the certification decision radically restricts the defendant's

---

[1] Defendants likely solicited declarations from other class members, but only two provided declarations that Defendants submitted with their opposition to class certification.

[2] If a class member opts out, it is obviously free to litigate against Defendants individually, settle its claims or otherwise.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

The Hon. Debra Freeman
February 25, 2014
Page 3

>    opportunities to so communicate for a simple reason: following certification, class counsel and absent class members have a formal, if unique, attorney-client relationship. Absent class members are therefore 'represented parties,' and ethics rules prohibit opposing counsel from contacting them directly. Defense counsel must therefore communicate with the opposing class members through class counsel after this point."

William B. Rubenstein *et al.*, *Newberg on Class Actions* § 9:9 (5th ed. 2013) (footnotes omitted). *Accord* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.33 (4th ed. 2014) ("Once a class has been certified, the rules governing communications apply as though each class member is a client of the class counsel .... Defendants' attorneys, and defendants acting in collaboration with their attorneys, may only communicate through class counsel with class members on matters regarding the litigation. Communications with class members in the ordinary course of business, unrelated to the litigation, remain permitted."); *Gortat v. Capala Bros., Inc.*, No. 07-cv-3629, 2010 WL 1879922, at *2 (E.D.N.Y. May 10, 2010) ("[C]lass certification gives rise to an attorney-client relationship between potential class members and class counsel .... Therefore, upon certification, defense counsel is bound by New York Rule of Professional Conduct 4.2(a), which provides that 'a lawyer shall not communicate or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the other lawyer or is authorized to do so by law.'") (citation omitted).[3]

Defendants are also specifically prohibited from influencing a class member's decision to opt out of the class. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.12 ("Defendants

---

[3] Defendants may seek to rely on the non-binding opinion of the American Bar Association, ABA Formal Op. 07-445 (Apr. 11, 2007), for the argument that a client-lawyer relationship between absent class members and class counsel does not begin until after the time for opting out has expired. However, the issue now is not whether a client-lawyer relationship exists between class members and class counsel, but the separate rule that Defendants may not solicit opt outs at any time during the course of the litigation. *See, e.g., Tedesco v. Mishkin*, 629 F. Supp. 1474, 1483-84 (S.D.N.Y. 1986) (even if attorney-client relationship between class member and class counsel did not begin until opt out deadline passes, defense counsel are prohibited from contacting absent class members to encourage opt outs); *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985) (holding that district court may restrict defendants' communications with absent class members regarding litigation and opting out; "'If the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive.' .... This litigation is illustrative. The class consisted of Bank borrowers, many of whom were dependent on the Bank for future financing.") (citations omitted); *Rankin v. Bd. of Educ.*, 174 F.R.D. 695, 697 (D. Kan. 1997) (barring opt out-related communications but allowing communications regarding other business relationships); *Hampton Hardware, Inc. v. Cotter & Co.*, 156 F.R.D. 630, 634 (N.D. Tex. 1994) (accord); *Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, 485 (S.D.N.Y. 2012) ("Defendants are hereby prohibited from ... communicating with any potential class member regarding this lawsuit and its subject matter other than through the class member's counsel, if any, absent prior permission from the Court.").

**Berger&Montague, P.C.**
ATTORNEYS AT LAW

The Hon. Debra Freeman
February 25, 2014
Page 4

and their counsel ... may not ... attempt to influence the decision about whether to request exclusion from a class ...."); *Newberg* § 8:42 (4th ed. 2012) ("A defendant may be enjoined from communicating with class members where the purpose of the communication is to encourage exclusion from the suit or to discourage the filing of proofs of claim."); *Tedesco*, 629 F. Supp. at 1484 (accord). The Court has discretion to restrict Defendants' communications with class members as part of its broad authority under Fed. R. Civ. P. 23. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100-01 (1981) (in considering requests to limit such communications, courts should weigh "the need for a limitation and the potential interference with the rights of the parties"). *See also In re School Asbestos Litig.*, 842 F.2d 671, 683 (3d Cir. 1988) (accord) (citing *Gulf Oil*, 452 U.S. at 104).

Plaintiff does not seek to interfere with any communications Defendants may have with class members concerning matters unrelated to this litigation. Instead, Plaintiff only seeks to prohibit such communications relating to this case which is particularly warranted in the factual circumstances here. *See also Zamboni v. Pepe West 48th St. LLC*, 2013 U.S. Dist. LEXIS 34201, at *9-10 (S.D.N.Y. Mar. 12, 2013) (where, as here, class members may have ongoing and dependent business relations with defendant, "communications may be deemed inherently coercive") (citing *Ralph Oldsmobile Inc. v. General Motors Corp.*, 2001 U.S. Dist. LEXIS 13893, at *11 (S.D.N.Y. Sept. 7, 2001)); *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 254 (S.D.N.Y. 2005) ("[D]efendants' unsupervised communications were improper because they sought to eliminate putative class members' rights in this litigation.").

We are prepared to provide Your Honor with any further information.

Respectfully,

Merrill G. Davidoff
Lawrence J. Lederer

MGD/LJL:ss
cc: Counsel for All Defendants (via ECF and fax)

kal6411235