## SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

March 4, 2014

*By ECF*

The Honorable Debra Freeman,
  United States Magistrate Judge,
    United States District Court, Southern District of New York,
      Daniel Patrick Moynihan United States Courthouse,
        500 Pearl Street,
          New York, New York 10007-1312.

     Re:   *Dodona I, LLC v. Goldman, Sachs & Co., et al.*,
           No. 10-cv-7497 (VM) (DCF)

Dear Judge Freeman:

      I write on behalf of defendants Goldman, Sachs & Co., The Goldman Sachs Group, Inc., Peter L. Ostrem and Darryl K. Herrick (collectively, "Defendants") in brief response to Dodona I, LLC's ("Dodona's") letter dated March 3, 2014 (the "Mar. 3 Letter") solely to address several misstatements in the Mar. 3 Letter.

      *First*, the Mar. 3 Letter attempts to justify Dodona's extraordinary request to foreclose otherwise permissible communications with the highly sophisticated and well-represented class members by again accusing Defendants of "surreptitiously" and "improper[ly]" obtaining sworn declarations from two sophisticated investors. (Mar. 3 Letter at 1, 3.) This is nonsense. As described in the Feb. 28 Letter, Defendants obtained these declarations through the discovery process *expressly authorized by this Court*. Neither of Dodona's letters provides any support for its baseless claims or explains why Dodona did not seek discovery from the declarants if it believed that the statements in their declarations were inaccurate or required explanation. And far from showing that one of the declarants was somehow exploited, the change of three words from an earlier draft that Dodona dwells on did not alter the declaration's import and underscores that the declarant was well-represented and precise.

      *Second*, Dodona misstates the authorities cited in our February 28, 2014 Letter. Dodona claims that American Bar Association Formal Op. 07-445 (the "ABA Opinion") "only applies . . . to communications prior to the certification of the class." (Mar. 3 Letter at 2.) That is wrong. The ABA Opinion expressly addressed the impact of class certification, stating that any attorney-client relationship between class counsel and absent class members "does not begin until the class has been certified and the time for opting out by a potential member of the class has expired." *ABA Opinion*, at 3. For that reason, "putative class members are not represented

The Honorable Debra Freeman
March 4, 2014                                                                                                                          -2-

parties . . . prior to certification of the class and the expiration of the opt-out period." *Id.* Dodona argues that "the question is not whether *class counsel* represents absent class members" (Mar. 3 Letter at 2, emphasis in original), but it is that relationship (which does not exist here) that forms the basis for the conclusions in the other authorities that Dodona cites. As for Dodona's similar attempt to distinguish the New York City Bar Association's Formal Op. 2007-1 on the basis that it "does not even address class actions but instead communications between a lawyer and in-house counsel of a party known to be represented" (Mar. 3 Letter at 2), the opinion's reasoning applies with *even more force* where the absent class members are sophisticated investors that have not yet agreed to representation by Dodona's counsel and most have their own regular counsel.

*Third*, Dodona's counsel does not address the obvious concerns associated with its effort to represent class members *that it advertises it is suing*. Instead, it pronounces those issues "neither persuasive nor relevant" (Mar. 3 Letter at 3), because Dodona's counsel believes it can represent those investors effectively. What Dodona does not—and cannot—say is that the class members have accepted that representation, a decision that Dodona seeks to forestall for as long as possible.

In the end, Dodona appears to concede that there is no rule prohibiting the types of communications in question. Rather, Dodona notes only that the Court has discretion to limit those communications (Mar. 3 Letter at 2), and argues that there is a "compelling need" for the requested remedy because of some assumed "potential for abusive communications." (Mar. 3 Letter at 2, 3 n.1.) But Dodona fails to explain how communications between Defendants and sophisticated investors or their counsel would be "abusive," merely speculating that "abuse" might arise because "Goldman Sachs continues to do business with certain class members." (Mar. 3 Letter at 1.) This speculation falls far short of the "specific record showing by the moving party of the particular abuses by which it is threatened" that the Supreme Court required in *Gulf Oil Co.* v. *Bernard*, 452 U.S. 89, 102 (1981), before placing limitations on communications with class members. Certainly, Dodona has identified no evidence to support its overly broad and wholly unwarranted request. Instead, Dodona's request reflects its continued improper effort to exercise total control over the prosecution of this action by unilaterally imposing an attorney-client relationship on absent class members.

Respectfully submitted,

Richard H. Klapper

cc:   All counsel of record (via e-mail and ECF)