**COHEN & GRESSER LLP**

800 Third Avenue
New York, NY 10022
+1 212 957 7600 phone
www.cohengresser.com

Brett D. Jaffe
212 957 9756
bjaffe@cohengresser.com

March 21, 2014

*By ECF*

The Honorable Debra Freeman
United States Magistrate Judge
United States District Court, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

   Re: *Dodona I, LLC* v. *Goldman, Sachs & Co., et al.*,
      No. 10-cv-7497 (VM) (DCF)

Dear Judge Freeman:

  I write on behalf of defendants Goldman, Sachs & Co. and The Goldman Sachs Group, Inc. (collectively, "Goldman Sachs") in response to Dodona I, LLC's ("Dodona's") letter dated March 20, 2014 (the "Mar. 20 Letter") relating to its request to foreclose otherwise permissible communications with the highly sophisticated and well-represented members of the class. Dodona's latest submission on this already thoroughly-briefed issue is replete with error and regrettably requires a brief response at the risk of further burdening the Court.

  The focus of Dodona's Mar. 20 Letter is my brief communications with counsel for **REDACTED** two of the largest financial services firms in the world. Those contacts were made solely in connection with the preparation of Defendants' summary judgment motion (which has since been deferred), which would likely address these class members individually. Dodona's counsel obviously could have itself reached out at any time to those institutions as well as to other class members, but instead has for months tried to forestall sending a class notice and otherwise avoid the prospect of dealing with the class members it supposedly represents. As addressed more fully in our previous letters, reluctant to engage with the class members (some of which are adverse to it in other litigation), Dodona's counsel prefers to leave them in the dark,

The Honorable Debra Freeman
March 21, 2014
Page 2

including by precluding Goldman Sachs from engaging in legitimate communications with them. In all events, there was nothing improper about the communications with **REDACTED**

*First*, Dodona complains that I "sent emails to, and spoke with, representatives of two class members" (Mar. 20 Letter at 1), without providing any details with regard to those communications. To be absolutely clear, since the certification of the class in this action, the only class members contacted by counsel for Goldman Sachs have been **REDACTED** through a single email to, and a single conversation with, counsel for each of them. We have never, at any time, sought to make contact with anyone at **REDACTED** other than counsel, each of whom is highly experienced in litigation of precisely this type (and indeed, **REDACT** itself was sued by Dodona's principal relating to another CDO investment).

*Second*, the Mar. 20 Letter states that I "communicat[ed] with class members to influence their decision to remain in or opt out of the class" "subsequent to" the parties' submissions to the Court regarding this issue. (Mar. 20 Letter at 1.) This statement—made without any factual knowledge on Dodona's part—is plainly false. In fact, virtually all of my very limited communications with in-house counsel for **REDACTED** took place *more than two weeks prior* to Dodona's February 25, 2014 letter to the Court. As Defendants' February 28 and March 4, 2014 letters to the Court have demonstrated, communications with counsel for a party are fully consistent with any possibly applicable ethical rules. Nor is there any validity to Dodona's assertions that Defendants have attempted to "pick off" class members. (Mar. 20 Letter at 2.) As my communication with Dodona's counsel made clear, at no time did I make any effort to persuade any class member to opt out of the class. I simply alerted each that it was a class member (which neither was aware of in the absence of the notice that Dodona has resisted sending) and inquired as to whether either has a general policy with regard to participation in class actions of this type. The reason for asking that question is simple: if either **REDACTED** **REDACTED** took the position that they categorically do not participate in classes of this type, there would be no reason to include that institution in Defendants' summary judgment motion. Ironically, had Dodona agreed to Defendants' request to defer summary judgment motions until after the opt-out period, there would have been no need for any such effort.

*Third*, the Mar. 20 Letter claims that "neither Plaintiff nor class counsel has initiated *any* contact with any class member at *any* time in this litigation." (Mar. 20 Letter at 2, emphasis in original.) This is unquestionably false. Dodona subpoenaed **REDACTED** in *August 2012*, months before Goldman Sachs first sought discovery from absent class members.[1] What *is true*,

---

[1] Also misleading is Dodona's assertion that "Plaintiff's claims are based on omissions." (Mar. 20 Letter at 2.) Dodona has steadfastly refused to confirm that it is not pursuing claims based on alleged misstatements and throughout the litigation has pursued discovery and made arguments concerning alleged misstatements in marketing materials for one of the CDOs at issue.

The Honorable Debra Freeman
March 21, 2014
Page 3

however, is that Dodona has gone to great lengths not to engage with class members in the normal manner of a class representative, precisely to keep the class in the dark as much as possible.

*Fourth*, the absurdity of Dodona's accusation that Defendants "surreptitiously" obtained sworn declarations from two sophisticated investors is detailed in Defendants' February 28 and March 4 letters, so I will not burden the Court by rehashing that issue here. It is important to note, however—lest Dodona's continued repetition of this patent mischaracterization create the veneer of veracity—that my communications with one investor and a major international law firm representing another investor all followed service on those investors of subpoenas that were copied to Dodona and adhered to a process that the Court *expressly authorized* in the interest of minimizing discovery obligations of non-parties. Significantly, Dodona has never addressed the obvious point that, notwithstanding its service of subpoenas on other then-putative class members, it never sought discovery from the declarant investors with respect to the substance of the declarations or any other matter at issue in this action. Instead, it has attempted to rely on erroneous speculation that conflicts with the express statements of the declarations and efforts to impugn the sworn testimony of class members that it seeks to represent, including suggestions in the Mar. 20 Letter that certain class members might breach their fiduciary duties to their clients. (Mar. 20 Letter at 2.)

*Fifth*, Dodona inexplicably claims that my conduct "raises ethical concerns" because of the "no-contact" rule. (Mar. 20 Letter at 3.) As set forth in Defendants' February 28 and March 4 letters, nothing in the ethics rules precludes communications in all events with absent class members' in-house or outside counsel, particularly where Dodona's counsel does not represent the absent class members. *See* American Bar Association Formal Op. 07-445 (Apr. 11, 2007) ("A client-lawyer relationship with a potential member of the class does not begin until the class has been certified and the time for opting out by a potential member of the class has expired.").

*Finally*, Dodona does not even attempt to argue that my communications with in-house counsel for **REDACTED** were so coercive or abusive that they satisfied the "specific record showing by the moving party of the particular abuses by which it is threatened" that the Supreme Court required in *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 (1981), before placing limitations on communications with class members. The Mar. 20 Letter ignores *Gulf Oil* entirely, arguing that this extraordinary remedy is warranted because of the necessity of ensuring that absent class members are informed of their "respective rights regarding the certified class." (Mar. 20 Letter at 3.) Dodona's newly-expressed desire to inform potential class members of

The Honorable Debra Freeman
March 21, 2014
Page 4

their rights (albeit only at some unspecified point in the future) would be a refreshing change, given its persistent efforts to delay as long as possible providing notice of class certification and unilaterally to impose an attorney-client relationship on absent class members, including those that Dodona's law firm currently is suing.

Respectfully submitted,

Brett D. Jaffe

cc: All counsel of record (via e-mail and ECF)