UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DODONA I, LLC, on Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GOLDMAN, SACHS & CO., et al.,<br><br>Defendants. | Case No. 10 Civ. 7497 (VM)(DCF)<br><br>ECF Case<br><br>Class Action |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ORDER APPROVING DISTRIBUTION OF CLASS ACTION SETTLEMENT FUNDS TO AUTHORIZED CLAIMANTS**

Lead Plaintiff Dodona I, LLC ("Plaintiff") submits this Memorandum of Law in support of its Motion for an order authorizing payment of the Net Settlement Fund to Authorized Claimants.[1] A proposed order ("Distribution Order") is being filed with this Memorandum. Entry of the Distribution Order will achieve the following:

(1) Approve the recommendations of the Court-appointed Claims Administrator, Heffler Claims Group, LLC ("Heffler"), for distribution of the Net Settlement Fund to Authorized Claimants. Heffler's procedures are set forth in the accompanying Declaration of Edward J. Sincavage in Support of Motion for Distribution of Net Settlement Fund ("Heffler Declaration"), attached hereto as Exhibit 1;

(2) Approve the payment of all valid claims to Authorized Claimants, as identified in the list of proposed "Payable Claims" attached as Exhibit A to the Heffler Declaration; and

(3) Reject the claims identified in the list of proposed "Non-Payable Claims" attached as Exhibit B to the Heffler Declaration.

Lead Counsel sent a draft of Plaintiff's motion papers to counsel for Defendants, and Defendants indicated they do not oppose the motion. As set forth in the Settlement Agreement, "[n]either Defendants nor any other Released Defendant Parties shall have any liability, obligation or responsibility whatsoever for the administration of the Settlement or disbursement of the Net Settlement Fund." (Dkt. 273-1 at ¶ 28, *accord* ¶¶ 23, 25.)

To our knowledge, no claimant with a Non-Payable claim disputes the conclusion that its claim is ineligible for payment or intends to challenge that conclusion or has requested a hearing

[1] Capitalized terms not otherwise defined herein have the meaning set forth in the parties' Stipulation and Agreement of Settlement dated February 11, 2016 ("Settlement Agreement"), which was filed previously with the Court (Dkt. 273-1) and approved by Order dated July 1, 2016 (Dkt. 287).

with the Court concerning the recommended disposition of its claim. (Heffler Decl. ¶ 28.)

## A. INTRODUCTION

This securities fraud class action was settled for $27.5 million. On February 16, 2016, the Court issued an order preliminarily approving the settlement ("Preliminary Approval Order"). (Dkt. 276.) The Preliminary Approval Order approved the Notice to the Settlement Class, the Proof of Claim form, and the notice plan. *Id.* at ¶ 3. It also approved the retention of Heffler as the Claims Administrator. *Id.* at ¶ 4.

On May 13, 2016, Plaintiff filed a declaration from Heffler indicating that Heffler disseminated the Notice and Proof of Claim form in accordance with the Settlement Agreement and Preliminary Approval Order. (Dkt. 282-2.) On June 24, 2016, Plaintiff filed a supplemental declaration from Heffler providing updated results from the notice program. (Dkt. 284-1 at ¶¶ 7-15.) The deadline for Class Members to submit settlement claims was June 29, 2016. (Dkt. 282-2 at ECF 10.)

On July 1, 2016, the Court held its Final Approval Hearing. Following that Hearing, the Court issued an order granting final approval of the Settlement ("Order and Final Judgment"). (Dkt. 287.) The Court also issued a separate Order approving an award of attorneys' fees and litigation costs and expenses (Dkt. 286 at ¶¶ 7, 10), and a separate Order approving the Plan of Allocation governing allocation of the Net Settlement Fund to Authorized Claimants (Dkt. 285).

Heffler has now completed its processing of Proof of Claim forms submitted by claimants. In doing so, Heffler followed the directives in the Settlement Agreement (Dkt. 273-1 at ¶¶ 25-33) and Plan of Allocation (Dkt. 282-2 at ECF 26 ¶¶ 82-89) as approved by the Court. Lead Counsel supervised Heffler throughout the claims administration process. The Net Settlement Fund is ready for distribution to valid claimants, subject to Court approval.

The balance in the Net Settlement Fund available for distribution to Authorized Claimants is $19,320,606.41 as of July 31, 2017. The balance consists of the following:

| | |
|---|---|
| $27,500,000.00 | Gross settlement amount |
| ($6,875,000.00) | Attorneys' fee award approved by the Court on 7/1/16 (Dkt. 286) |
| ($1,273,377.29) | Expense award approved by the Court on 7/1/16 (Dkt. 286) |
| ($50,000.00) | Plaintiffs' service award approved by the Court on 7/1/16 (Dkt. 286) |
| ($82,931.61) | Claims administration fees and costs |
| $134,789.31 | Interest income earned on the settlement fund through 7/31/17 |
| ($32,874.00) | Income taxes re: interest income earned on settlement fund |
| $19,320,606.41 | Net Settlement Fund[2] |

(Heffler Decl. ¶ 45 & Ex. D thereto.)

## B. SUMMARY OF PAYABLE AND NON-PAYABLE CLAIMS

Heffler received and processed 74 claim submissions. A summary of Heffler's recommended disposition of each claim is attached to the Heffler Declaration at Exhibit A (Payable Claims) and Exhibit B (Non-Payable Claims) thereto. The total claimed purchase price for all such claims was approximately $589 million. (Ex. A-B to Heffler Decl.) The claims submission rate was particularly strong in this case given that the Settlement Class consisted of approximately 70 investors. (Dkt. 108 at ECF 8, 16; Dkt. 282 at ¶¶ 59, 68.)

### 1. Payable Claims

Each proposed Payable Claim is identified in Exhibit A to the Heffler Declaration. Exhibit A summarizes the claim number, quantity of notes purchased (par amount), purchase price paid, principal payments received (if any), quantity of notes subsequently sold (if any), sale price of subsequent sales (if any), and recognized loss for each Authorized Claimant. The total

[2] The Net Settlement Fund will be slightly higher than this amount when the distribution takes place because it will continue to earn interest in accordance with the Settlement Agreement. (Dkt. 273-1 at ¶ 9.)

purchase price paid by all Authorized Claimants was approximately $241 million, and the recognized loss from those purchases was approximately $229 million. (Ex. A to Heffler Decl.) Subject to Court approval, and in accordance with the Plan of Allocation, these Authorized Claimants will receive settlement checks in an amount equal to the ratio that their recognized loss bears to the total recognized loss of all Authorized Claimants, multiplied by the amount available for distribution in the Net Settlement Fund.

**2. Non-Payable Claims**

Each proposed Non-Payable Claim is identified in Exhibit B to the Heffler Declaration. Exhibit B summarizes the claim number, quantity of notes purchased (par amount), purchase price paid (if provided by claimant), principal payments received (if provided), quantity of notes subsequently sold (if provided), sale price of subsequent sales (if provided), and recognized loss (if any) for each claimant. The list includes an explanation of why Heffler recommends that each claim be deemed non-payable. In sum, each proposed Non-Payable Claim is ineligible for payment for one or more of the following reasons: (i) the claim was voluntarily withdrawn by the claimant; (ii) the claim was duplicative of a claim submitted by another claimant; (iii) the claim had a recognized loss of $0 because the security was bought and sold at the same price or was acquired at a $0 cost basis; and/or (iv) the claimant failed to respond to Heffler's multiple requests for information necessary to cure a deficiency in the claim submission. (Ex. B to Heffler Decl.) The total claimed purchase price for all Non-Payable Claims was approximately $347 million. *Id.*

Each claimant that submitted a deficient claim was sent a detailed letter from Heffler advising of the deficiency and requesting documents or information necessary to cure the deficiency. If the claimant failed to respond, or the claimant's response did not fully cure the

deficiency, Heffler sent a follow-up letter and/or email requesting a response and providing further opportunities to cure the deficiency. Heffler undertook several rounds of communications with many claimants. This process took months to resolve, as is customary in our experience in securities class action settlements. For example, in one instance, Heffler reminded a large claimant of its deficiencies approximately ten times, and ultimately received curative documents in June 2017. In another instance, the disposition of a claim was not resolved until August 2017 after numerous rounds of communications with the claimant. (Heffler Decl. ¶ 20.) The outreach process balanced the need of protecting the Settlement Class from meritless claims with ensuring that claimants who are entitled to settlement proceeds receive those proceeds with minimal effort. Lead Counsel assisted and supervised Heffler throughout the process of identifying and resolving claimant deficiencies.

The Settlement Class size in this case was estimated to be 70 Class Members. (Dkt. 108 at ECF 8, 16; Dkt. 282 at ¶¶ 59, 68.) A total of 43 Settlement Class Members submitted valid Payable Claims, meaning that 61% of the Class submitted valid payable claims. (Heffler Decl. ¶ 39.) This is a strong claims rate, particularly given that the Hudson CDO securities in this case were issued ten years ago, the passage of time often reduces claims rates, and several Settlement Class Members have since been dissolved. *See generally* William Rubenstein et al., *Shedding Light on Outcomes in Class Actions*, at 29 (2008), *available at* http://www.billrubenstein.com/Downloads/RAND%20Chapter.pdf ("large institutional investors routinely fail to file claims in securities class action settlements"); Tiffaney Janowicz, *Class Action Perspectives: Anticipating Claims Filing Rates in Class Action Settlements*, at 2 (2013), *available at* http://c.ymcdn.com/sites/www.thefederation.org/resource/resmgr/Events/PastConferences/2013_Winter_Handouts.pdf ("A typical securities settlement may conclude with between 20 and 35 percent of class

members having filed claims."); Newberg on Class Actions § 12:17 (5th ed. 2017) ("most class members will never step forward and file claims for relief in most class actions"; discussing study in which the average claims rate was approximately 30%); *see also* Heffler Decl. ¶ 39 ("Based on my more than 35 years of experience as a claims administrator, the 61% claims rate here is a strong claims rate for a securities class action . . . .").

The total par amount of Hudson CDO securities sold by the defendants to investors eligible to participate in the Settlement was approximately $756 million. (Dkt. 282 at ¶ 91; Dkt. 279 at ECF 23; Dkt. 273-1 at ECF 51 ¶ 3.) The valid Payable Claims consist of purchases with an aggregate par amount of approximately $297 million and recognized loss of $229 million. (Ex. B to Heffler Decl.) Thus, the ratio of aggregate recognized losses by valid claimants to total sales by the defendants (the maximum potential damages) is 30%. That too reflects a strong claims rate. *See Approved Claims Rates in Securities Class Actions*, Cornerstone Research, at 1 (2017), *available at* https://www.cornerstone.com/Publications/Research/Approved-Claims-Rates-in-Securities-Class-Actions.pdf (noting that the ratio of approved claimants' losses to aggregate class damages was 20% and 38% in two notable securities fraud class actions).

**C. SUMMARY OF NOTICE PROCEDURES**

Heffler distributed the Proof of Claim form and Settlement Notice directly to all known Settlement Class Members. (Heffler Decl. ¶¶ 32-33.) Heffler used a mailing list based on information provided from defendant Goldman Sachs & Co.'s trading records and other sources. The mailing list contained 236 name and address records for beneficial owners and/or their nominees of the Hudson CDO securities. The list contained multiple alternative addresses for nearly all investors. *Id*. As previously reported to the Court, after factoring in mailings returned as undeliverable, all known Settlement Class Members received at least one copy of the Proof of

Claim form and Settlement Notice by direct mail. (Dkt. 284-1 at ECF 4 ¶ 10(a); Heffler Decl. ¶ 33.)

Thirteen of the address records also included email addresses. In addition to regular mailing via the U.S. postal service, Heffler also emailed the Proof of Claim form and Settlement Notice to each of those email addresses. (Heffler Decl. ¶ 34.)

Heffler undertook additional procedures to disseminate the Proof of Claim form and Settlement Notice to financial institutions and others so that they could forward the documents to any of their clients that were actual or potential investors in the Hudson CDO securities. (Heffler Decl. ¶ 35.) Also, a Summary Notice was published in *The Wall Street Journal* and issued via press release in *PR Newswire*. *Id.* at ¶ 36.

Thus, Heffler performed a thorough notice program aimed at providing direct notice to all known Settlement Class Members. The Order and Final Judgment concluded that "Notice given to the Class was the best notice practicable under the circumstances, including individual notice to all Members of the Settlement Class who could be identified through reasonable effort, and constituted due and sufficient notice to all Persons." (Dkt. 287 at ¶ 10.)

**D. PAYMENT OF CLAIMS ADMINISTRATION FEES AND EXPENSES**

The Settlement Agreement at ¶ 18 (Dkt. 273-1) states:

> Lead Counsel may expend up to $75,000 from the Settlement Fund, without further approval from Defendants or order of the Court, to pay reasonable Notice and Administration Costs actually incurred and Taxes and Tax Expenses. Such costs and expenses shall include, without limitation, the costs of publication of the Summary Notice, printing and mailing the Notice, reimbursements to nominee owners for forwarding the Notice to their beneficial owners, the administrative expenses actually incurred and fees reasonably charged by the Claims Administrator in connection with searching for Settlement Class Members and providing Notice and processing and paying the submitted claims, and the reasonable fees, if any, of the Escrow Agent.

The $75,000 threshold is an amount by which payments under that threshold can be paid without

prior Court approval. It is not an aggregate cap on claims administration costs. Additional amounts above $75,000 may be paid with Court approval.

The total Notice and Administration Costs incurred by Heffler, including anticipated future fees and expenses through completion of the distribution process, amount to $82,931.61. (Heffler Decl. ¶ 41.) Of that amount, $48,512.68 has already been paid to Heffler from the Net Settlement Fund. (Heffler Decl. ¶ 44.) Lead Counsel requests Court approval to pay Heffler the remaining $34,418.93 it is owed. The proposed Distribution Order submitted with this Memorandum contains a paragraph approving this proposed payment.

In addition, Taxes to the federal and state government have been paid and/or reserved totaling $32,874.00. (Heffler Decl. ¶ 42 and Ex. D thereto.) Of that amount, $9,035.00 has already been paid, and $23,839.00 has been reserved for anticipated future Taxes owed. *Id.*

The portion of Heffler's fees and expenses attributed to its future work, as well as the reserve for future Taxes, will remain in the Net Settlement Fund until after Heffler performs the applicable work and/or the Taxes become due. In the event that the amounts for those reserves exceed the amounts that actually become due and payable, the excess will be treated in accordance with the Settlement Agreement, which states:

> If any portion of the Settlement Fund remains following distribution (or redistribution) to Authorized Claimants pursuant to this Stipulation and is of such an amount that in the discretion of Lead Counsel it is not cost effective or efficient to redistribute the amount to the Class, then such remaining funds, after payment of any further Notice and Administration Costs and Taxes and Tax Expenses shall be distributed by Lead Counsel to an appropriate nonsectarian, non-profit, charitable organization without further Court approval.

(Dkt. 273-1 ¶ 12.)

**E. RE-DISTRIBUTION**

If any claimants fail to timely cash their settlement checks, Heffler will make diligent efforts to encourage the claimants to cash their checks. If a re-distribution of uncashed settlement checks becomes necessary in the discretion of Lead Counsel, Heffler will distribute the proceeds in the same *pro rata* manner as the initial distribution. (Heffler Decl. ¶¶ 47-48.)

**F. DISPOSITION OF CLAIMS ADMINISTRATOR'S RECORDS**

Lead Counsel requests approval for Heffler to destroy all records concerning its claims administration duties in this matter no earlier than three years after final distribution of the Net Settlement Fund.

## CONCLUSION

The Net Settlement Fund is now ready to be distributed to Authorized Claimants, subject to Court approval. Lead Counsel respectfully requests that the Court enter the proposed Distribution Order authorizing the distribution to Authorized Claimants.

Dated: August 25, 2017

Respectfully submitted,

Berger & Montague, P.C.

/s/ Jon J. Lambiras

Merrill G. Davidoff (mdavidoff@bm.net)
Lawrence J. Lederer (llederer@bm.net)
Gary E. Cantor (gcantor@bm.net)
Jon J. Lambiras (jlambiras@bm.net)
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604

*Lead Counsel for Lead Plaintiff Dodona I, LLC and the Settlement Class*

kal7652816